IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No.: |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ALPHAPORT, INC. and | ) | COMPLAINT |
| ANTHONY J. MIRANDA, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This is an action by the United States of America to recover damages and civil penalties from Defendants Alphaport, Inc. and Anthony J. Miranda for causing false claims to be submitted to the National Aeronautics and Space Administration ("NASA") by fraudulently misrepresenting Alphaport's eligibility for the Historically Underutilized Business Zone ("HUBZone") program in order to fraudulently obtain contracts NASA set aside for award to a HUBZone business and fraudulently claiming money under those contracts.

PARTIES

1. The Plaintiff in this action is the United States of America ("United States").

2. The Defendants are Alphaport, Inc., an Ohio corporation with its principal place of business in Independence, Ohio, and Anthony J. Miranda, an individual residing in Hinckley, Ohio.

JURISDICTION AND VENUE

3. This action is brought by the United States under the False Claims Act, 31 U.S.C. §§ 3729-33.

4. This court has subject matter jurisdiction over this action pursuant to 31 U.S.C. § 3732(a) and 28 U.S.C. § 1345.

5. Venue is proper in this district pursuant to 31 U.S.C. § 3732(a) because the Defendants reside in this district.

FACTS

A. The HUBZone Program

6. Congress enacted the HUBZone program in 1997 to encourage small businesses to locate in areas of the country that traditionally experienced difficulty in attracting business. The goal of the program is to spur investment and job growth in areas where both were lacking. As Congress explained, the HUBZone program "targets special Federal government help to inner cities and rural counties that have low household incomes, high unemployment, and whose communities have suffered from a lack of investment." S. REP. NO. 105-62, at 25 (1997), 1997 U.S.C.C.A.N. 3076, 3098. Creating incentives for small businesses to locate in targeted communities is the fundamental goal of the HUBZone program. "[W]ithout businesses in these communities, we don't create jobs, and without sources of new jobs, we are unlikely to have a successful revitalization effort." *Id.* at 3099.

7. Towards that end, the HUBZone program gives preferences in government contracting to businesses that qualify as a HUBZone small business concern. 15 U.S.C. § 657a. Among other options, agencies can designate a contract as a HUBZone set-aside, which restricts competition for the contract to only those companies that are HUBZone certified. 15 U.S.C. § 657a(b)(2)(B).

8. The SBA has authority to certify a company as a qualified HUBZone firm. 13 C.F.R. § 126.300. To qualify as a HUBZone small business concern, the applicant must meet four basic eligibility requirements. First, as applicable to Alphaport, the business must be owned and controlled by a U.S. citizen. 13 C.F.R. § 126.200(b)(1)(i). Second, it must qualify as a small business. 13 C.F.R. § 126.200(b)(2). Third, the business's principal office must be located in a HUBZone designated as such by regulation. 13 C.F.R. § 126.200(b)(3). Finally, at least 35 percent of the business's employees must reside in a HUBZone. 13 C.F.R. § 126.200(b)(4).

B. Alphaport's HUBZone Applications

9. On or about January 22, 2002, Miranda submitted a HUBZone Application to the SBA on behalf of Alphaport.

10. In connection with the initial HUBZone Application, Miranda certified that not less than 35% of Alphaport's employees resided in a HUBZone.

11. Specifically, at the time of the initial HUBZone Application, Miranda certified that Alphaport had 2 full-time/full-time equivalent employees, both of whom resided in a HUBZone.

12. In April 2008, Alphaport submitted a HUBZone Recertification Application to the SBA.

13. The Recertification Application stated that Alphaport had 32 full-time/full-time equivalent employees at the time of the Recertification Application, 13 of whom resided in a HUBZone.

14. The Recertification Application stated that Rosella Miranda, Alphaport's CEO and Defendant Miranda's wife, entered the information in the Application.

15. Upon questioning, Rosella Miranda stated that she likely received help in completing the Recertification Application from Miranda and that, ultimately, either she or Miranda electronically submitted the information to the SBA.

16. Based on the representations in the Recertification Application, the SBA recertified Alphaport for the HUBZone program on or about April 18, 2008.

17. In fact, as Defendants knew, beginning no later than 2006, less than 35% of Alphaport's full-time/full-time equivalent employees resided in a HUBZone.

C. Alphaport Obtains HUBZone Contracts from Government Agencies Using Its Fraudulently Obtained HUBZone-Certified Status

18. Using its fraudulently obtained HUBZone-certified status, Alphaport submitted bids on and was awarded the following contracts:

    a. NASA/Glenn Research Center: Contract No. NNC06BA06B, awarded July 3, 2006, in Cleveland, Ohio.

    b. NASA/Glenn Research Center: Contract No. NNC09BA03B, awarded November 21, 2008, in Cleveland, Ohio.

19. Each of the contracts identified above (the "Contracts") were listed as set-asides for qualified HUBZone small businesses, in that only HUBZone-certified companies were eligible to bid on and receive the Contracts.

20. Each of the Contracts incorporated Federal Acquisition Regulation clause 52.219-3 (48 C.F.R. § 52.219-3), which states, in pertinent part:

> (1) Offers are solicited only from HUBZone small business concerns. Offers received from concerns that are not HUBZone small business concerns shall not be considered.
>
> (2) Any award resulting from this solicitation will be made to a HUBZone small business concern.

21. Defendants submitted or caused to be submitted the bids for the Contracts and the claims for payment under the Contracts.

22. Defendants knew that the HUBZone certifications in the bids on the Contracts, as well as the claims for payment under the resulting Contracts, were false when submitted.

23. Exhibit A lists the Contracts, the invoices submitted under each contract, and the amount of the payments by NASA for each of the invoices. Each of the invoices listed in Exhibit A constitutes a false claim for payment.

## COUNT I

### FALSE CLAIMS ACT - 31 U.S.C. § 3729(a)(1)(A)
(against Alphaport and Miranda)

24. Plaintiff realleges and readopts the allegations set forth in the preceding paragraphs as if fully rewritten herein.

25. Alphaport and Miranda knowingly caused to be presented to the United States false or fraudulent claims for payment or approval, in violation of the False Claims Act, 31 U.S.C. § 3729(a)(1)(A), specifically the invoices submitted by the Defendants to NASA.

26. By reason of Defendants' acts, the United States has been damaged.

## PRAYER FOR RELIEF

WHEREFORE Plaintiff prays that judgment be entered in its favor and against Defendants on Count I in the amount of triple the Plaintiff's damages plus civil penalties for each false claim as allowed by law against Defendants, plus pre-judgment interest and costs of this action.

Respectfully submitted,

JUSTIN E. HERDMAN
United States Attorney


By: s/ David M. DeVito
David M. DeVito (CA Bar #243695)
Assistant U.S. Attorney
United States Courthouse
801 West Superior Avenue
Suite 400
Cleveland, OH 44113
Phone: (216) 622-3818
Fax: (216) 522-2404
E-Mail: david.devito@usdoj.gov

ATTORNEY FOR THE
UNITED STATES OF AMERICA